GORDON et al. v. TURCO-HALVAH CO., Inc., et al.

(District Court, S. D. New York. November 30, 1915.)

No. 12/51.

1. PATENTS ☞326(4)—INFRINGEMENT—CONTEMPT—EVIDENCE.

The existence of a subsequent patent for an article said to be produced in contempt of a final decree in an infringement suit is most material in proceeding to punish for such contempt, for it is presumed that the subsequent patent cannot in any way violate the earlier patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 615–619; Dec. Dig. ☞326(4).]

2. PATENTS ☞326(4)—INFRINGEMENTS—CONTEMPT.

When substantial difference exists between an article the manufacture of which was enjoined as infringing a patent, and an article the manufacture of which is claimed to be in contempt of the decree, the court will not try a new patent case in the contempt proceeding, but will remit plaintiff to a new action, or application for supplementary injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 615–619; Dec. Dig. ☞326(4).]

3. PATENTS ☞251—INFRINGEMENT—WHAT CONSTITUTES.

Where a patent for a food product set forth one of the elements as cottonseed oil, it covers no product but that made of cottonseed oil, and a similar food product made of another oil is not an infringement.

[Ed. Note—For other cases, see Patents, Cent. Dig. § 391; Dec. Dig. ☞251.]

4. PATENTS ☞251—INFRINGEMENT—FOOD PRODUCT.

Where a patent for a bleached, sweetmeat compound showed that it was to be composed partly of oily matter, and specified whitish peanut butter as the oily matter, a subsequently patented compound substituting a different oily matter is merely a patent for an improvement, and the manufacture of such compound without the consent of the original patentee is an infringement.

[Ed. Note—For other cases, see Patents, Cent. Dig. § 391; Dec. Dig. ☞251.]

5. PATENTS ☞326(4)—INFRINGEMENTS—PROCEEDINGS.

Where an injunction issued to restrain infringement of a patent is violated, no steps will be taken to punish on the criminal side of the

court, except on interposition of the United States attorney; but the District Court will ascertain the damages, loss of profits, etc.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 615–619; Dec. Dig. &⟶326(4).]

In Equity. Bill by George S. Gordon and others against the Turco-Halvah Company, Incorporated, and another. On motion to punish for contempt of an injunction issued pursuant to a consent decree. Cause referred to master.

Maurice Block, of New York City, for complainants.
James H. Griffin, of New York City, for defendants.

HOUGH, District Judge. This proceeding to punish for contempt, though begun by an order to show cause against all of the defendants herein, appears to affect only the Turco-Halvah Company, Incorporated, and Nathan Radutsky; these being the only defendants served so far as the papers before me show. The decree, infringement of which is complained of, counts upon two patents, the Gordon patent (1,063,533) and the Wolf patent (1,074,483).

The decree rests upon a consent which is of record, and both the decree and the injunction follow the consent. By it these defendants specifically agree not only to abstain from "directly or indirectly making * * * any candy * * * containing the inventions described and claimed in" said letters patent or either of them, but "any candy or food products like or similar to those that [said defendants] or any of them have heretofore made."

A more comprehensive decree cannot be imagined. The plaintiffs as matter of fact make under their patents a candy consisting of about one half in volume of sugary matter and the other half in volume of oily matter, the whole being bleached by the infusion of a small quantity of soap root. The sugary half of plaintiffs' product is made of glucose and sugar, and the oily half of sesame, cottonseed oil, and peanut butter. There is no difference between what the plaintiffs have long made, what the defendants agreed to abstain from making, and what the defendants are now making, except the substitution of maize oil for cottonseed oil as a part of the oleaginous half of the delicious compound known as Halvah.

[1] Defendants justify their present proceeding by averring that they are not violating either patent in suit, because they operate under the Roselle patent (1,154,059), which was applied for and obtained after the consent decree hereinabove referred to. Undoubtedly the existence of a subsequent patent which reads upon an article said to be produced in contempt of a final decree is a most material piece of evidence. This is because the presumption of validity which attaches to every patent creates a presumption that the subsequent patent cannot be in any way a violation of the rights of an earlier patentee.

[2] It is also admittedly true that, when any substantial difference exists between the article once declared by decree to be an infringement and the article complained of as contemptuous, the court will not

try a new patent case in a contempt proceeding, but will remit the party plaintiff to a new action, or perhaps an application for a supplementary injunction (a practice which seems to be growing, and which I personally look upon with favor).

[3] Applying these principles to the patents mentioned in the final decree herein, it is seen that the Wolf patent is for a food product, the elements of which are specifically set forth in each claim, and one element especially mentioned is always cottonseed oil. I am not prepared to hold that, where one element of a composition of matter is a particular kind of oil, the patent is violated by another product which substitutes an entirely different oil. The Wolf patent is most specific, and I doubt whether it covers anything but a product containing cottonseed oil, even though other oils look the same, taste the same, and would make just as good candy.

[4] I do not think that this kind of argument applies to the Gordon patent. The second claim of that patent is for "a bleached sweetmeat compound composed of approximately 35 per cent. corn syrup, 15 per cent. granulated sugar, and 50 per cent. of a whitish peanut butter." The specification shows that the peanut butter is the oily matter, and the result is in the specification particularly denominated "the Turkish sweetmeat known as Halvah."

Under the Gordon patent, therefore, the question is this: Was Roselle entitled to a patent over Gordon, by substituting in the oily half of his compound a proportion of maize oil, instead of ground peanuts? If the Gordon patent ever should have been granted, I think Roselle was entitled to a patent for this change; but it could never be anything more than an improvement over Gordon, so that, giving full weight to the Roselle patent, it still remains true that Roselle must pay tribute to Gordon, and since the plaintiffs own the Gordon patent, and the defendants operate under the Roselle patent, defendants have no right to make their improved Halvah without paying tribute to the original Gordon patent for Halvah.

The morals of this case do not bolster up the defendants' side. It is quite evident that they agreed to respect the Gordon and Wolf patents and submitted to a decree to that effect, all the while intending to keep on making Halvah by partially substituting one kind of grease for another. They did not intend to make any difference in taste, for the plaintiffs' cottonseed oil element is notoriously inert and tasteless, and the defendants' maize oil element is in the opinion of Roselle, the patentee and affiant for defendants herein, rendered tasteless by heating. In short, defendants have from the time this consent decree was entered intended and contrived to keep the letter and evade the spirit of their own contract and the decree and injunction founded thereon. For present purposes I think they have succeeded so far as the Wolf patent is concerned, but as to the Gordon patent they are in my judgment in contempt.

[5] Under existing practice no steps will be taken to punish on the criminal side of the court, except on the interposition of the United States attorney; but this court will proceed civilly to ascertain the ex-

penses, damages, and loss of profits that the plaintiffs have been put to by reason of the actions of the defendants served with this order to show cause. For the purpose of ascertaining such damages, expenses, and loss of profits, the matter will be referred to Frank J. Kent, Esq.

4. TRADE-MARKS AND TRADE-NAMES ⬅35—RIGHT TO TRADE-MARK.
   In such case, plaintiff is after expiration of the patent entitled to the trade-mark, where its value lay, not in the worth of the patent, but in plaintiff's advertising campaign by which large numbers of the suspenders were sold.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ⬅35.]

5. TRADE-MARKS AND TRADE-NAMES ⬅35—RIGHT TO TRADE-MARK.
   In such case, the fact that plaintiff in the course of years associated the name "Shirley" with the name "President," so that the trade-mark became "Shirley President," does not diminish its rights.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ⬅35.]

6. TRADE-MARKS AND TRADE-NAMES ⬅7—WHAT CONSTITUTES.
   The word "President," used in connection with suspenders, is not a descriptive term and may be the subject of trade-mark.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 11; Dec. Dig. ⬅7.]

7. TRADE-MARKS AND TRADE-NAMES ⬅35—RIGHT TO TRADE-MARK—PAYMENT OF ADVERTISING.
   In such case, though defendant bore a part of the cost of the advertising campaign which caused the extensive sale of the suspenders, that

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
233 F.—28